Guest v. The Burlington Opera-House Co.

GUEST v. THE BURLINGTON OPERA-HOUSE COMPANY.

1. Payment: EVIDENCE: ENTRIES IN CREDITOR'S BOOKS. The entries in a person's books, showing payment in full of an account to him, are *prima-facie* evidence against him; but where both he and the one to whom the payment is credited testify that the account has not been paid in full, and the action is against another person, the question of payment should be submitted to the jury.

2. Agency: CHARGING PRINCIPAL'S DEBT TO AGENT: PRINCIPAL NOT DISCHARGED. Where one knowingly deals with an agent within the scope of his agency, and makes charges on his books to the agent, instead of to the principal, on account of debts contracted for the principal, he is not thereby precluded from afterwards asserting the claim against the principal.

3. Estoppel: IN PAIS: WHAT NECESSARY TO CONSTITUTE. Where a creditor, whose debt arose under a contract with an agent, represented to the principal that the debt had been paid by the agent; but the principal had already settled with the agent with the understanding that the debt had not been paid, and that the principal would have it to pay, and afterwards paid the agent the amount thus agreed to be due him upon the settlement, *held* that the creditor was not estopped from looking to the principal for the amount of the debt, since the principal did not rely on the representations made by the creditor, and would not sustain any injury by the creditor's being permitted to deny the truth of the representations.

4. Practice: TAKING CASE FROM JURY: WHEN ADMISSIBLE. Before the court is warranted in directing a verdict, every fact favorable to the party against whom the verdict is asked, and which the evidence tends to prove, must be conceded.

*Appeal from Des Moines District Court.* — HON. CHARLES H. PHELPS, Judge.

FILED, MAY 16, 1888.

ACTION at law to recover the rent of a piano. When the evidence was all introduced, the court directed the jury to find for defendant, and afterwards entered judgment on the verdict returned in obedience to that direction. Plaintiff appeals.

*Seerley & Clark*, for appellant.

*C. L. Poor*, for appellee.

REED, J.—Defendant employed George A. Duncan as general manager of an opera-house owned by it, under a contract by which he was to receive as compensation for his services fifteen per cent. of the net proceeds of the business. He contracted with plaintiff for the rent of a piano to be used in the opera-house, the contract being within the scope of his powers as manager, and plaintiff knowing at the time the capacity in which he was acting. After serving in that capacity for some time, he resigned ; and a negotiation was entered into between him and defendant's board of directors for a settlement of their accounts. He presented to them a number of bills for expenses incurred in the business, which he represented were unpaid, and among them plaintiff's bill for the rent of the piano. He also claimed $100.12 for money advanced by him in the payment of expenses, and three hundred and forty dollars paid by him to a clerk who kept the books pertaining to the business, the payment having been made out of the proceeds of the business. The total amount of his claim was $757.60, of which amount $647.48 was for the fifteen per cent. of the net proceeds which he was to receive for his services. The directors offered to pay him the amount of his claim, less the three hundred and forty dollars paid the book-keeper. He at first rejected the offer, but after several months concluded to accept it, and so notified the directors, and they paid him the amount. After the offer was made, but before it was accepted or the money paid, some of the directors called on plaintiff with reference to the

bill for the rent of the piano, and he represented to them that he made no claim therefor against the company, but that he had charged the amount to Duncan, and that it was paid or settled. He also exhibited to them his ledger, which showed the account for the rent of the piano, together with a number of items for merchandise charged to Duncan. It also showed three items of credit to him, which exceeded by $80.51 the amount of the account for rent of the piano, and other items charged to him; also the payment of that amount to him in cash to balance the account; and they reported these facts to the board of directors. Duncan was an insurance agent, and the amounts for which plaintiff had given him credit were for the premiums on insurance which he had written for him.

I.    It is insisted that the action of the court in directing the verdict for defendant can be sustained on

**1. PAYMENT: evidence: entries in creditor's books.** the ground that the evidence shows that plaintiff has been paid the amount of the account by Duncan, and he is, therefore, not entitled to recover as against defendant. If the question rested alone upon what was shown by plaintiff's ledger, perhaps this position would be correct; for clearly the entries therein are, as against plaintiff, *prima-facie* evidence of payment. But both he and Duncan testified that the account had not, in fact, been paid. On this state of the evidence, plaintiff clearly had the right to have the question of payment, if the case turned on that question, passed upon by the jury, and we deem it proper to say that we do not believe that the district court based its ruling on this ground. If the ruling can be sustained, it must be upon the ground either (1) that plaintiff, by charging the account to Duncan, elected to accept him as the debtor, and is now precluded from claiming the amount from defendant; or (2) that he is now estopped, by his representation that he looked alone to Duncan for payment, and that the debt had been settled or paid, from asserting a claim for the amount against defendant.

II.   It will be conceded that, when a creditor has the right to look to either one of a number of parties for the payment of his debt, he may, by his election to look alone to one of them, be precluded from afterwards asserting it against the others.   We do not, however, determine that this result would follow from the act merely of charging the debt to the one, or from the declaration of the creditor that he looks alone to him for payment; for in the present case it is unnecessary to inquire as to what acts would amount to an election. The relation which existed between the defendant and Duncan was that of principal and agent.   The business carried on was the business of defendant, and Duncan was its agent for the management of that business.   An agent who, without disclosing the capacity in which he is acting, contracts with reference to the business of his agency, and within the scope of his powers, is personally liable on the contract.   The principal, however, is also bound, and the party contracted with may afterwards pursue his remedy against him.   But if the capacity in which the agent is acting is known at the time to the other party to the contract, the principal alone is bound by it.   These are well-settled principles of the law of agency, and the citation of authorities in their support is unnecessary.   When the contract for the rent of the piano was entered into, plaintiff knew that Duncan was general manager for defendant.   He knew, also, that the contract had relation to its business.   Under the contract between defendant and Duncan, the rental was to be paid out of the gross proceeds of the business.   But, under the agreement with plaintiff, his right to payment was not dependent on whether a sufficient amount should be realized from the business to pay him.   The rental, when it accrued, was a debt due him for which defendant alone was liable.   Duncan was not answerable for it, for, as we have said, he contracted as agent, and the fact of his agency was known. But, to afford a right of election by the creditor, there must be two parties, both of whom are liable for the

2. AGENCY: charging principal's debt to agent: principal not discharged.

debt. As but one was primarily liable in this case, it is clear that the right of election did not exist, and the ruling cannot be sustained on this ground.

III. To constitute an estoppel *in pais*, it is essential that the representation or statement relied upon

3. ESTOPPEL: in pais: what necessary to constitute.

should have been acted upon by the party to whom it was made, and that he will sustain some injury if the one making it be permitted to deny its truth. If a creditor, whose debt arose under a contract made with an agent, represents to the principal that the debt has been paid by the agent, or that he looks alone to him for pay, and the principal thereafter settles with the agent on that assumption, there is probably no doubt that the creditor would be estopped from thereafter asserting the claim against him. In the present case, however, it does not conclusively appear from the evidence that the settlement between defendant and Duncan was made on the assumption either that plaintiff's debt had been paid, or that he looked alone to Duncan for payment; but, on the contrary, there was evidence tending to prove the reverse. Neither does it conclusively appear that defendant will sustain an injury if plaintiff be now permitted to deny the truth of that representation; for, while the money was paid after the representation, the offer to pay that amount was made before that, and was made on the assumption that the rental was then unpaid, and that defendant was liable for it. The amount of plaintiff's bill was not included in the offer; neither was it covered by the payment to Duncan. But the amount offered and paid was fifteen per cent. of the receipts after deducting the expense bills, including the one in question, increased by the amount which he had paid for expenses, and diminished by the amount he had paid the book-keeper. At least, there was evidence tending to prove these facts; and, before, the court is

4. PRACTICE: taking case from jury: when admissible.

warranted in directing a verdict, every fact favorable to the party against whom the verdict is asked, and which the evidence tends to prove, must be conceded. It is true,

some of defendants testified that they paid the money to Duncan in the belief that plaintiff's bill was paid, and would not otherwise have consented to the payment; but this evidence is not necessarily conclusive of the question, and, under the most favorable view for defendant of the evidence, the parties were entitled to go to the jury upon it. We are of the opinion, therefore, that the district court erred in directing the verdict.

REVERSED.