## HILL et al. v. GRATIGNY PLATEAU DEVELOPMENT CORPORATION et al.

No. 5692.

Circuit Court of Appeals, Sixth Circuit.

July 3, 1931.

Rehearing Denied Oct 9, 1931.

HICKS, Circuit Judge, dissenting.

John M. Cole, of Springfield, Ohio, and A. S. Iddings, of Dayton, Ohio (Cole, Bowman & Hodge, of Springfield, Ohio, and D. W. & A. S. Iddings, of Dayton, Ohio, on the brief), for appellants.

William Keifer and Frank W. Geiger, both of Springfield, Ohio (Keifer & Keifer, of Springfield, Ohio, on the brief), for appellees.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

MOORMAN, Circuit Judge.

On September 27, 1925, the Gratigny Plateau Development Corporation, as vendor, and "Frank J. Braun, Trustee," as vendee, entered into a "binder" agreement, at Miami, Fla., for the sale of Florida real estate. The purchase price was $152,500, payable $36,500 down and the balance in six semiannual installments beginning January 15, 1926. On the following day, September 28, an "agreement for deed" was executed by the same parties, in the same manner, and sealed. This agreement contained the same terms as the prior one, and in addition contained restrictive covenants as to streets and taxes, with an acceleration clause as to deferred payments. Simultaneously with the

execution of the agreement for deed, "Frank J. Braun, Trustee," executed, under seal, notes payable to the order of the Gratigny Company corresponding in amount, maturity, and interest with the deferred payments referred to in the agreement. The notes did not mention the agreement, and contained no acceleration clause, nor anything to show they were in series. The down payment was made, and the note due January 15, 1926, was paid on its due date. Some of the other notes not being paid when due, the Gratigny Company filed this suit at law on March 2, 1928, to recover the balance of the purchase price. Judgment was asked against Braun and also against Cugley, Hill, Cartmell, and Essex, upon the theory that Braun acted as their agent and/or partner in making the purchase. Upon the trial, there was a directed verdict for plaintiffs, and judgment was entered thereon. The defendants other than Braun appeal.

After the execution of the notes and before the filing of suit, two of the notes were sold. Under a ruling of the trial court, the plaintiff was required to make the purchasers of these notes, O'Donnell and Lowry, parties plaintiff, and, by supplemental petition alleging the transfer of the Lowry note to Harry and Sarah Orner, the latter were substituted for the former as parties plaintiff. These coplaintiffs adopted the allegations of the petition as amended, and joined in the prayer thereof for a recovery of the unpaid purchase money, three-fifths to the Gratigny Company, one-fifth to O'Donnell, and one-fifth to Harry and Sarah Orner.

■ The petition as amended set up the execution of the binder agreement, the agreement for deed, and the several notes for the purchase price. Appellee contends that the action is based on the binder agreement. We cannot accept that view. The binder agreement was, in fact, a receipt for a sum paid by Braun to bind the contract, and, while it recited the terms of payment, it did not set forth all the terms of the contract, but was superseded by the agreement for deed containing terms and covenants not included in the binder. It appears, therefore, that the parol agreement, unenforceable because not in writing, did not become a binding contract in all of its terms until the execution of the agreement for deed. Furthermore, the only right that the Gratigny Company has to maintain an action on one of the notes sued upon rests upon the acceleration clause in that contract, not contained in the binder or the notes. It may be that there is

ground for contending that, as to O'Donnell and the Orners, the action is based on the notes which they hold, but, if that be true, they are in no better position than their coplaintiff, for the notes also were executed under seal, and the right of action thereon is not only affected by that circumstance, but is subject to such further limitations as may be imposed by the Negotiable Instrument Act. Moreover, the petition alleges that, at the time of making the "last mentioned agreement," that is, the agreement for deed, the notes were executed and delivered "as evidence of the amounts to be paid thereunder but not in payment thereof." Whether this averment be true or not, it shows that plaintiffs did not seek a recovery on the notes, as such, but upon the contract, and, as we have said, the only written contract which sets forth all the terms and conditions of the agreement is the "agreement for deed." We think the action is founded on that agreement.

■ Appellants entered into an agreement among themselves to speculate in Florida lands and employed Braun, an experienced real estate man, to buy and sell the lands, upon the understanding that his expenses would be paid, and that he would participate in the division of any profits that were made. It does not appear that he was to share in any losses that were sustained, and there is nothing in the evidence to show that "Frank J. Braun, Trustee," was ever adopted or used by appellants as a partnership name, or that Braun purported to act or did act in the capacity of partner. The true relation between the parties is set out in Braun's letter to Cugley, of September 5, 1925, saying: "I shall, as your agent and representative undertake to invest and reinvest in Florida real estate such sums of money as you shall put to my disposal." In the same letter, he stated that it was the understanding that the titles, options and rights "taken in my name * * * shall in reality be held in trust for you." It is thus clear that Braun was not a partner of appellants, but was merely their agent with authority to purchase land.

■■ Under the law of Florida, a contract for the sale of real estate may be executed as a simple contract, without seal. Lente v. Clarke, 22 Fla. 515, 1 So. 149. The general rule is that when a simple contract other than a bill or note is executed by an agent in his own name, whether he describes himself as agent or not, or whether the principal be known or unknown, the principal may be

made liable thereunder, and will be entitled to sue thereon.[1] It is also the settled law that an action can be maintained upon a sealed instrument only against those whose names are signed thereto or appear therein, and accordingly that a contract properly executed under seal is not enforceable against an undisclosed principal. Willard v. Wood, [135 U. S. 309, 10 S. Ct. 831, 34 L. Ed. 210; Badger Silver Min. Co. v. Drake (C. C. A.) 88 F. 48; Western Sugar R. Co. v. Helvetia Swiss Fire Ins. Co. (C. C.) 163 F. 644; Seretto v. Schell, 247 Mass. 173, 141 N. E. 871. As heretofore stated, we think this action both as to the Gratigny Company and as to the holders of the assigned notes is founded on the agreement for deed. Considering it from that point of view, the question is whether a contract not required to be under seal, though sealed, is to be treated as a specialty or sealed instrument.

 Upon the question just stated, there is a conflict of ruling among the decisions.[2] These cases varyingly rest on common-law rules and statutory enactments. They are pertinent here in so far only as they do not conflict with the Florida statutes as construed by the highest court of that state. Section 5705 (3827) of the Compiled General Laws of Florida 1927 provides that all written instruments made with a scrawl or scroll, printed or written, affixed as a seal, shall be sealed instruments, and shall be construed and received in evidence as such in all the courts of the state. Construing this statute in Langley v. Owens, 52 Fla. 302, 42 So. 457, 11 Ann. Cas. 247, the Supreme Court of Florida held that the placing of the characters or device "L. S." upon a promissory note in the usual place for a seal imported an intention to make the note a sealed instrument, and hence the five-year statute of limitation applicable to simple contracts did

not apply. A similar ruling was made by the court in Grand Lodge K. of P. v. State Bank, 79 Fla. 471, 84 So. 528, where it was said that there was nothing in a negotiable promissory note, not requiring a seal, which prevented the maker from affixing a seal thereto, and, if he chose to do so, it became a sealed instrument unless such effect would defeat the intention of the parties. See, also, Comerford v. Cobb, 2 Fla. 418, and Johnson v. County of Wakulla, 28 Fla. 720, 9 So. 690.

It is said by appellee that the rule announced in the foregoing decisions has been modified by Humphrey v. Bussey, 99 Fla. 1249, 128 So. 841, and Ballas v. Lake Weir Light & Water Co. (Fla.) 130 So. 421, 423. We do not think so. In the Humphrey Case, no reference was made to the cases just referred to, the decision being placed on the ground that the action was based, not upon a sealed contract, but upon an implied promise to pay for the land by the parties who had caused it to be conveyed. The Ballas Case involved an agreement executed by the president of the corporation as such. The corporate seal was placed on the agreement, which recited, among other things, that the "property is more fully described in a contract between Lake Weir Light & Water Company [defendant] and Louis B. Magid." The court said: "Looking at the whole instrument, we think it sufficiently appears on its face to have been the intent of the parties to bind the corporation and not to personally bind R. L. Martin and Lucile Potter [president and secretary, respectively], and we so hold," thus holding that it appeared from the contract itself that it was the intent of the parties to make the company a party to the agreement. In view of this holding, what was said as to the effect of placing a seal upon a simple contract must be regarded as dictum.

The agreement for deed with which we are dealing was executed with all the formality of a deed—"signed, sealed and delivered" in the presence of witnesses. It declares that the vendor "covenants," and later refers to the "covenants" of each of the parties. A covenant by definition is a specialty. According to the Florida decisions such a contract, when so executed, in the state of Florida becomes a sealed instrument. These decisions are controlling, but even if they were not, there is nothing on the face of this agreement to indicate an intention to bind appellants. Appellees say that the use of the term "trustee" signifies a representative capacity, and hence it was permissible to show the rela-

---

[1] Humphrey v. Bussey, 99 Fla. 1249, 128 So. 841; Nicoll v. Burke, 78 N. Y. 580; Edwards v. Gildemeister, 61 Kan. 141, 59 P. 259; Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 Am. St. Rep. 451; Powell v. Wade, 109 Ala. 95, 19 So. 500, 55 Am. St. Rep. 915; Alvord v. Banfield, 85 Or. 49; Smith v. Campbell, 85 Or. 420, 166 P. 546; Crable & Son v. O'Connor, 21 Wyo. 460, 133 P. 376; Curran v. Holland, 141 Cal. 437, 75 P. 46.

[2] Machesney v. Brown (C. C.) 29 F. 145; Van Dyke v. Van Dyke, 123 Ga. 686, 51 S. E. 582, 3 Ann. Cas. 978; Walsh v. Murphy, 167 Ill. 228, 47 N. E. 351; Seretto v. Schell (1923) 247 Mass. 173, 141 N. E. 871; Briggs v. Partridge, 64 N. Y. 357, 21 Am. Rep. 617; Schaefer v. Henkel, 75 N. Y. 378; Crowley v. Lewis, 239 N. Y. 264, 146 N. E. 374. Contra: Barbre v. Goodale, 28 Or. 465, 38 P. 67, 43 P. 378; Stowell v. Eldred, 39 Wis. 614; Kirschbon v. Bonzel, 67 Wis. 178, 29 N. W. 907; Lancaster v. Knickerbocker Ice Co., 153 Pa. 427, 26 A. 251; Harris v. McKay, 138 Va. 448, 122 S. E. 137, 32 A. L. R. 156.

tionship de hors the instrument. But the powers and duties of a trustee are radically different from those of an agent, and we know of no rule of construction that permits "Trustee," as deliberately used in a document of this kind, to be construed as "agent." Generally, a trustee can do no more than pledge his credit as trustee, probably becoming liable personally, but not making his cestuis que trust liable. Many of the cases hold, with sound reason, that the adding of the term "agent" to the signature of a sealed instrument does not bind the principal, in the absence of the naming of the principal in the instrument itself. Appellees ask us to say that these decisions are not sound and to go further and hold that "Trustee" imports "agent." This we cannot do. The failure or refusal of Braun to name appellants, either in the body of the contract or in his signature thereto, coupled with the formality in which the contract was executed, indicates a purpose, it seems to us, not to bind them. We think the contract is a sealed instrument, and that the court below should have directed a verdict for appellants.

The judgment is reversed, and the cause remanded for further proceedings.

HICKS, Circuit Judge (dissenting).

I cannot concur. I agree that Braun was an agent with authority to purchase the land, and he might have purchased it by simple contract. However, the court finds that the contract was under seal, and that appellants are not bound thereby. I doubt if this contract rises to the dignity of a sealed instrument, but if it does it was not necessarily so as between the parties to it. I see no good reason why appellees, as principals, might not ignore the seal and take the property. I think this is exactly what they did. They immediately went about to sell the land. The correspondence by telegram and letter indicates that they thought they could sell it in sixty days. Braun, as their agent, agreed with the Gratigny Corporation or Wallace, for it upon a commission of 5 per cent. on all sales. On December 20, 1925, this commission was increased to 7½ per cent. "on the sale of all or any part of our holdings in the Gratigny Plateau." (See Braun's letter of that date.) I think such attitude of appellees toward the property was a sufficient recognition of the agreement as an unsealed instrument, and ratification of it as a simple contract.

I think the judgment of the District Court should be affirmed.